UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*****************************          Civil Action No. 1:11-cv-10390-MBB
WALDECIR VIANA,                *
                               *
              Plaintiff,       *
v.                             *
                               *
AURORA LOAN SERVICES,          *
MORTGAGE ELECTRONIC            *
REGISTRATION SYSTEMS AS        *
NOMINEE,                       *
                               *
                               *
              Defendants,      *
                               *
*****************************
```

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

In support of its Motion to Dismiss, Defendants Aurora Loan Services LLC ("Aurora") and Mortgage Electronic Registration Systems, Inc., as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank ("MERS"), by and through its attorneys, Doonan, Graves & Longoria, LLC, hereby submits the following Memorandum of Law.

### I. INTRODUCTION

The Plaintiff commenced this action seeking to enjoin the foreclosure of his mortgage. The Plaintiff is not challenging his default. The Plaintiff's complaint does not contain separate legal counts setting forth distinct causes of action, but based on general factual allegations, Plaintiff appears to be challenging the loan as "Predatory" generally pursuant to (M.G.L. Ch. 183C), and further asserts a third party right to relief for alleged

violations of the Home Affordable Mortgage Plan (HAMP) program. The Complaint is properly dismissed where, as here, the bare allegations do not state a claim for relief.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2007, the Plaintiff executed a Note to Lehman Brothers Bank, FSB, a Federal Savings Bank in the amount of four hundred three thousand seven hundred fifty and 00/100 ($403,750.00)("Note"). *See* Exhibit A (a true and correct copy of the Note is attached hereto and incorporated herein). To secure the loan obligation, the Plaintiff gave a Mortgage to Mortgage Electronic Registration Systems, Inc., as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank on property located at 94 Hadley Street, Malden, MA ("Property"), which was recorded on February 9, 2007, in the Middlesex County (Southern District) Registry of Deeds in Book 48973, at Page 207 ("Mortgage"). *See* Exhibit B (a true and correct copy of the Mortgage is attached hereto and incorporated herein). An Assignment of the Mortgage from Mers to Aurora Loan Services LLC, dated October 22, 2009, was recorded on November 3, 2009, at the aforesaid Registry in Book 53777, at Page 544 ("Assignment"). *See* Exhibit C (a true and correct copy of the Assignment is attached hereto and incorporated herein).[1]

On July 7, 2009, the Plaintiff defaulted on his loan obligation and Aurora commenced foreclosure proceedings against the subject property. On November 6, 2009, Aurora Loan Services LLC filed the complaint to satisfy the Servicemembers Act in the Land Court and concurrently, a Freddie Mac Avoidance Letter was sent to the Plaintiff and co-borrower,

---

[1] Because the Plaintiff's claims relate to the loan obligation and the enforcement of the Defendant's lien, the loan documents and foreclosure documents are incorporated within the complaint and should be considered in connection with this motion to dismiss. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

2

Cleonice R. Viana. *See* Exhibit D (a true and correct copy of the Letters are attached hereto and incorporated herein). On January 27, 2010, the foreclosure referral was placed on hold for a Loss Mitigation Workout. On April 20, 2010, Aurora advised our firm to proceed with the foreclosure and a foreclosure sale was set for June 22, 2010. On or about May 13, 2010, Orders of Notice were published, served and recorded, and the undersigned made its return to the Land Court to obtain Judgment against the aforesaid Waldecir A. Viana and co-borrower Cleonice R. Vianna. On or about May 24, 2010, the Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure of Mortgage letters were sent to Waldecir A. Viana and co-borrower, Cleonice R. Viana via certified mail along with the Notice of Mortgagee's Sale of Real Estate. *See* Exhibit F (a true and correct copy of the Letters are attached hereto and incorporated herein). On May 26, 2010, June 2, 2010, and June 9, 2010, the Notice of Mortgagee's Sale of Real Estate was published in the Malden Evening News. *See* Exhibit G (a true and correct copy of the publication is attached hereto and incorporated herein). On May 26, 2010, the foreclosure sale scheduled for June 22, 2010, was postponed to June 29, 2010, so that the Internal Revenue Service could receive notice. On May 26, 2010, Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure of Mortgage letters were sent to Waldecir A. Viana and co-borrower, Cleonice R. Viana, and Notice of Intent to Foreclose Mortgage was sent to the Internal Revenue Service, U.S. Department of Justice-Tax Division and US Attorney via certified mail. *See* Exhibit H (a true and correct copy of the Letters are attached hereto and incorporated herein). Judgment indicating compliance with the servicemembers act was entered on June 15, 2010. *See* Exhibit I (a true and correct copy of the Judgment is attached hereto and incorporated herein). On June 28, 2010, the Plaintiff filed Chapter 13 bankruptcy, and the foreclosure sale

scheduled for June 29, 2010, was cancelled. Relief was granted on October 19, 2010, and a foreclosure sale was scheduled for November 30, 2010. On November 4, 2010, the foreclosure sale scheduled for November 30, 2010, was postponed to December 9, 2010, for Internal Revenue Service notification. On November 5, 2010, November 12, 2010, and November 19, 2010, the Notice of Mortgagee's Sale of Real Estate published in the Malden Evening News. *See* Exhibit J (a true and correct copy of the publication is attached hereto and incorporated herein). On November 5, 2010, Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure of Mortgage letters were sent to Waldecir A. Viana and co-borrower, Cleonice R. Viana, and Notices of Intent to Foreclose Mortgage were sent to the Internal Revenue Service, U.S. Department of Justice-Tax Division and US Attorney via certified mail along with the Notice of Mortgagee's Sale of Real Estate. *See* Exhibit K (true and correct copies of the letters are attached hereto and incorporated herein). On November 30, 2010, the foreclosure sale scheduled for November 30, 2010, was postponed to January 11, 2011, in order to give notice to the Massachusetts Department of Revenue. Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure of Mortgage letters were sent to Waldecir A. Viana and co-borrower, Cleonice R. Viana, and Notice of Intent to Foreclose Mortgage was sent to the Internal Revenue Service, U.S. Department of Justice-Tax Division, US Attorney, and MDOR via certified mail along with the Notice of Mortgagee's Sale of Real Estate. *See* Exhibit L (a true and correct copy of the Letters are attached hereto and incorporated herein). On December 14, 2010, Aurora advised our firm to place the loan on hold for Loss Mitigation Workout and the foreclosure sale scheduled for January 11, 2011, was postponed to March 11, 2011. *See* Exhibit M (true and correct copies of the notices are attached hereto and incorporated herein).

On March 7, 2011, the Plaintiff filed a Complaint ("Plaintiff's Motion") in Middlesex County Superior Court. After being served a copy of the Plaintiff's Motion, through the undersigned, the Defendants removed the matter to this Court. On March 8, 2011, the foreclosure sale scheduled for March 11, 2011, was postponed to April 26, 2011, so that Plaintiff could submit HAMP documentation to Aurora. On March 9, 2011, the Plaintiff was approved for a Trial Home Affordable Modification Program (HAMP). *See* Exhibit N (a true and correct copy of the Letter is attached hereto and incorporated herein). Notwithstanding approval for this workout alternative Plaintiff refuses to dismiss the undersigned action with prejudice thus, Defendant has filed this Motion to Dismiss.

### III.   LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a complaint, if it fails to state a claim upon which relief can be granted. Dismissal is appropriate when the complaint fails to plead sufficient facts demonstrating a plausible entitlement to the relief requested. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1950 (2009). When reviewing a complaint for dismissal, the "factual allegations must be enough to raise a right to relief above the speculative level . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. In order to survive a motion to dismiss, a complaint must allege enough facts to support a claim for relief that is not just "conceivable" but "plausible on its face." *Id.* at 570.

Bare allegations and legal conclusions and/or a "formulaic recitation of a cause of action's elements will not do." *Id.* at 555.

In reviewing a motion to dismiss, when a complaint includes exhibits and said exhibits contradict the allegations set forth in the complaint, the exhibits control. *Clorox Co. v. Procter & Gamble Commercial Co.* 228 F.3d 24, 32 (1st Cir. 2000). Additionally, the Court may take judicial notice of actions proceeding in other forums and matters of public record, as well as, documents, whose authenticity is not challenged, that are incorporated by reference within the complaint's factual allegations. *See In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003) ("These principles require us to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice."); *see also Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

### IV.   ARGUMENT

#### A. The Plaintiff's Claim for a Loan Modification Fails to State a Claim for Relief and Must be Dismissed.

The Plaintiff claims that he has a right to a loan modification. Even if he had not been given the HAMP trial Agreement he was given in March, the Plaintiff could not obtain relief on this basis. While loss mitigation is offered to borrowers whose loans are in default or who are facing financial hardship; under Massachusetts law, there is no inherent right to a loan workout or an obligation on the part of the mortgagee and/or servicer to modify each and every loan. Moreover, there are no provisions in the loan documents obligating the mortgagee and/or servicer to workout the Plaintiff's loan. *See Federal National Mortgage Associates v. Tong,* 60 Mass App. Ct. 1105, 2003 WL 22881029, at *1 (2003).

Additionally, the Home Affordable Modification Program ("HAMP") provides borrowers with no express or implied private right of action against loan servicers and/or mortgagees, whether directly or indirectly through state law. *See Williams v. Geithner*, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (HAMP guidelines did not intend "to create a property interest in loan modifications for mortgages in default"; *McKensi v. Bank of America*, N.A., 2010 WL 3781841, at *5-6 (D. Mass. Sept. 22, 2010) (borrower is not an intended third party beneficiary under HAMP); *Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *4-5 (D. Ariz. June 22, 2010) (Court dismissed the borrower's breach of contract claim holding that he is not an intended beneficiary of HAMP and further that HAMP does not provide a private right of action); *Villa v. Wells Fargo Bank, N.A.*, 2010 WL 935680, at *3 (S.D. Cal. March 15, 2010) (borrower does not have enforceable rights under HAMP).

To ensure servicer compliance with HAMP, Congress delegated compliance oversight to Freddie Mac:

> Per designation by the Secretary, Freddie Mac serves as compliance officer for the HAMP. . . Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.

*Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *6.

Moreover, HAMP does not require all loans to be modified and does not create an absolute entitlement to modification, but rather, the statute states specifically that loans may be modified "where appropriate." *See* 12 U.S.C. §5219(c); *See Williams,* 2009 WL 3757380 at *6; *Sankey v. Aurora Loan Services, LLC*, 2010 WL 4450404, at *2 (D. Mass. Nov. 4,

7

2010) ("[A] lender is not required to modify all eligible loans."); *Simmons v. Countrywide Home Loans, Inc.*, 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010) ("The Agreement does not state that Countrywide *must* modify all mortgages that meet the eligibility requirements only that it is required to *consider* them."). While the Treasury Department has set forth certain threshold criteria[2] to determine eligible borrowers, it has given servicers some discretion with respect to certain variables in making eligibility determinations under HAMP and has excused servicers from performing, if the loan investors have not consented, even after reasonable efforts by the servicer to remove the prohibition. Supplemental Directive 09-01 at pg. 1.

If the borrower meets the threshold criteria, the servicer must then verify the borrower's financial information and apply the Waterfall sequence and Net Present Value ("NPV") test as set forth in the Treasury guidelines to determine if the borrower qualifies for a permanent modification. Supplemental Directive 09-01 pg. 4 & 8-10.[3] Here, the

---

[2] If the borrower meets the following threshold criteria, the servicer/mortgagee is required to consider the loan for a permanent modification, subject to investor servicing agreements:

> 1) the loan is a first mortgage loan originated on or before Jan. 1, 2009;
> 2) the loan is secured by a one to four family property, one unit of which is the borrower's principal residence, which must be verified by the servicer;
> 3) the property has not been abandoned or condemned;
> 4) the current unpaid principal balance is no greater than specified limits;
> 5) the loan is delinquent or default is reasonably foreseeable;
> 6) the borrower has a monthly mortgage payment greater than 31% of his documented monthly income; and
> 7) the borrower documents financial hardship.

Supplemental Directive 09-01 at pg. 2-3.

[3] The first step requires servicers to capitalize accrued interest, out of pocket escrow advances and any reasonable costs incurred in servicing the loan. *Id.* at 9. The second step is to reduce the interest rate in increments of .125%, with a floor of 2%. *Id.* If the 31% target is still not reached, the third step is to extend to 40 years. *Id.* Finally, if necessary, the servicer forbears a portion of the principal, requiring it to be paid via a

8

Defendant was only required to consider the Plaintiff for HAMP and was under no obligation or requirement to modify, even if the Plaintiff was originally approved for a trial period plan.[4] [5] *See Marks,* 2010 WL 2572988, at *7 ("Because Defendant was not required to admit or deny Plaintiff's loan, only to *consider,* Plaintiff could not have been reasonably believed that Defendant was obligated to modify her loan."). Accordingly, even if he were not approved for a HAMP trial and even if he is ultimately not approved for a permanent modification, the Plaintiff does not have standing to enforce HAMP against the Defendant and failure to modify the Plaintiff's loan permanently is not a violation of state or federal law, and cannot form the basis of a viable claim for relief.

## B. Mortgage Electronic Registration Systems Inc. ("MERS") had a Right to Assign the Plaintiff's Mortgage to the Defendant.

The Plaintiff's claim that MERS did not have the legal power to transfer the Mortgage to the Defendant is without merit and must be rejected as a matter of law. As set forth in detail below, it is undisputed that MERS, as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank, had the authority to assign the Plaintiff's Mortgage to the Defendant in connection with the transfer of the Note to the Defendant. Furthermore, the Plaintiff's

---

balloon payment on maturity of the loan. *Id.* at 9-10. If these steps do not achieve the 31% target, then modification is not required.
Under the NPV test, the servicer compares the NPV result if the modification takes place to the NPV result if no modification takes place. *Id.* at 4. If the NPV result is greater if the modification takes place, then the servicer must modify the loan. If the NPV result is greater if the modification does not take place, then the modification is left to the servicer's discretion – the servicer is not required to modify the loan. *Id.*
[4] Under the original HAMP guidelines (applying to modification reviews prior to June 1, 2010), if the borrower satisfied the threshold eligibility criteria set forth in Supplemental Directive 09-01, the servicer *had the option* of offering a trial period plan to the borrower, *before* verifying financial information and determining if the borrower was eligible for a permanent modification. Supplemental Directive 09-01 at pg. 5. Supplemental Directive 10-01, effective June 1, 2010, amended this procedure and now requires the servicer to verify the borrower's eligibility prior to offering a trial period plan. Supplemental Directive 10-01, at pg. 1.
[5] Pursuant to Supplemental Directive 09-01, the trial period plan is three months and may last longer "if necessary to comply with applicable contractual obligations."

9

claim that the Note and Mortgage "split" rendering the Mortgage unenforceable lacks any factual and legal support and, in fact, is contrary to the case law in this district.

1. The Role of MERS[6]

MERS administers an electronic registration and tracking system, known as the MERS system, that "track[s] the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity." *In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006); MERS, http://www.mersinc.com.

> MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located.

*Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 491 (Minn. 2009). For loans registered in the MERS system, MERS is designated the mortgagee of record, as nominee for the lender and its successors and assigns. *Id.* The lender and mortgage servicing company, if applicable, use the MERS system to track the ownership and subsequent transfers of the loan. *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 83 (N.Y. 2006). "During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system." *Id.* When the beneficial interest in a loan is sold,

---

[6] MERS is the wholly owned subsidiary of MERSCORP, Inc.

10

through endorsement and delivery of the note, MERS remains nominee for the new note holder and mortgagee of record, either until the collection activity commences on the loan and an assignment is required or the loan is transferred to a non-MERS member. *Jackson*, 770 N.W.2d at 491.

### 2. The Plaintiff's Mortgage

In the case at hand, the Plaintiff's Mortgage was originally held by MERS as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank, its successor and assigns. Pursuant to the Plaintiff's Mortgage, MERS 1) was the nominee for the lender and its successors and assigns;[7] 2) was the mortgagee; 3) held legal title to the interest granted by the borrowers and 4) has the power to enforce the terms of the mortgage. By executing the Mortgage, the Plaintiff consented to MERS' role as nominee and authorized MERS "to take any action required of the Lender" and its successors and assigns, to enforce their rights under the Mortgage. Consequently, MERS has the customary rights of a mortgagee and may act on behalf of the lender and its successor and assigns in executing an assignment of mortgage to the Defendant. *See In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006); *see also Bassilla v. GMAC Mortgage*, No. 09-J-519 (Mass. App. Ct. Dec. 4, 2009) ("[T]he lender's nominee and record title holder [MERS] had the ability to make a valid assignment.").

The assignment of mortgage from MERS to the Defendant represents a valid transfer in furtherance of the Defendant's rights as holder of the Note. As nominee for the original lender and *its successors and assigns*, MERS held the Mortgage in trust for the benefit of the Defendant, when the Defendant became the holder of the Note. *Boruchoff v. Ayvasian*, 323

---

[7] "A nominee is generally understood as a person designated to act in place of another." *In re Huggins*, 357 B.R. at 183 (citing BLACKS LAW DICTIONARY (8th ed. 2004)).

11

Mass. 1, 10, 79 N.E.2d 892, 897 (1948) ("Where a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation, and, therefore, held in trust for the benefit of the owner of the obligation."); *see In re Huggins*, 357 B.R. at 183. There was no need for a formal assignment from MERS to the Defendant, until the loan went into default and the Defendant initiated foreclosure proceedings. *See Carpenter*, 83 U.S. at 275; *see also U.S. Bank Nat. Ass'n v. Ibanez*, 2009 WL 79501 (Mass. Land. Ct. March 26, 2009) (Massachusetts law requires that a foreclosing mortgagee have a valid assignment of the mortgage at the time of the notice is published). Because MERS acts as nominee for the current holder of the note, it is not required to have a beneficial interest in the note in order to transfer the mortgage. As a result, the assignment from MERS to the Defendant is valid and the Plaintiff's claim fails as a matter of law.

Moreover, the Plaintiff's conclusory allegation that as "Nominee for Aurora Loan Services, MERS lacks standing to foreclose" appears to be a boiler plate paragraph that was incorrectly included in the present action wherein MERS is not seeking to foreclose. Moreover, to the extent that Plaintiff's argument can be read as criticizing the assignment of the mortgage from MERS to ALS, it must be rejected as a matter of law. *See Kiah v Aurora Loan Services, LLC*, 2011 WL 8412982 (D.Mass.), Page 7.

### C. Plaintiff's Cause of Action Challenging the Defendant's Standing Must be Dismissed Because he Fails to State a Claim Upon Which Relief can be Granted.

The Plaintiff alleges that the Defendant lacks standing to foreclose. This claim must be rejected as a matter of law, because the Plaintiff's Complaint is legally and factually insufficient to support a viable claim for relief under this theory.

The loan documents speak for themselves and upon careful review of note, endorsement, and assignments of the mortgage as outlined herein, it is respectfully submitted that the Plaintiff has failed to plead facts which could form a basis for challenging a cause of action for standing. The Defendant has not knowingly, purposefully or willfully submitted any documentation that does not truthfully and properly reflect the chain of title of the underlying Mortgage and Note. The chain of title is unassailable. Since the recording of the initial AOM in November 2009, record title to the mortgage has stood exclusively in the name of the Defendant. It is axiomatic that the assignment from the original holder to ALS must be deemed valid.

In the case at hand, the Plaintiff's allegations do not give rise to a viable claim. As the record indicates, there is an unbroken chain of title evidencing the Defendant as the assignee of record of the Mortgage and holder of the Note. Whatever rights the originating lender had in the Note and Mortgage now belong to the Defendant by virtue of the endorsement and transfer of the Note from Lehman Brothers Bank, FSB, to the Defendant as well as the assignment of mortgage by MERS, on behalf of Lehman Brothers Bank, FSB, to the Defendant.

### D. The Plaintiff's Cause of Action for Violation of G.L. c. 183 §28C Must be Dismissed Because the Complaint Fails to State a Claim for Relief.

The Plaintiff claims that the Defendant violated G.L. c. 183 §28C, and by implication its implementing regulation 209 CMR 53.00, because the subject loan transaction was not in the Plaintiff's interest. In support, the Plaintiff fails to allege any specific facts which would support his boiler-plate argument." Complaint ¶ Under G.L. c. 183 §28C and 209 CMR 53.00, "a lender shall not knowingly make a home loan if the home loan pays off all or part of an

13

existing home loan that was consummated within prior 60 months or other debtor of the borrower, unless the refinancing is in the borrower's interest."[8]

The Plaintiff's claim that this loan was not in his interest is legally and factually insufficient. He does not analyze the facts that must be considered when determining whether a loan is in a borrower's interest, in fact the only statement the Plaintiff makes in support of his claim that the loan was not in his interest was the bare allegation that it was "predatory" and "high cost" Complaint ¶ 2. However, this allegation is not enough to demonstrate a plausible entitlement to relief. Additionally, with respect the Plaintiff's claim, the statute and its implementing regulation set forth no right by a borrower to maintain an action against an assignee of the originating lender. Here, Lehman Brothers Bank, FSB., not the Defendant, was the originating lender of the Plaintiff's loan. Complaint ¶ 6. As a holder in due course and assignee and successor in interest to Lehman Brothers Bank, FSB., the Defendant cannot be held liable for any alleged violation under this chapter.[9]

**E. The Plaintiff's Claim for Damages Under G.L. c. 93A Fails as Matter of Law.**

---

[8] Factors to consider in making a best interest determination:

> (a) the borrower's new monthly payment is lower than the total of all monthly obligations being financed, taking into account the costs and fees;
> (b) there is a change in the amortization period of the new loan compared to the original amortization term of the old home loan;
> (c) the borrower receives cash in excess of the costs and fees of refinancing;
> (d) the borrower's note rate of interest is reduced;
> (e) there is a change from an adjustable to a fixed rate loan, taking into account costs and fees;
> (f) the refinancing is necessary to respond to a *bona fide* personal need or an order of a court of competent jurisdiction; or
> (g) the time it takes to recoup the costs of refinancing, taking into account the costs and fees.

209 CMR 53.04(3).
[9] *See* G.L. c. 106 §3-302.

14

The Plaintiff also asserts that the Defendant violated G.L. c. 93A and seeks damages and attorney fees, based on the alleged violations set forth in his Complaint. This claim must be dismissed, because the Plaintiff failed to comply with the procedural requirements of the statute. Pursuant to G.L. c. 93A §9, a demand letter must be sent at least thirty days prior to the filing of any action for relief under G.L. c. 93A. The failure to send a specific demand letter outlining conduct which would constitute a violation of law renders any G.L. c. 93A claim untenable. *See Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812, 333 N.E.2d 202, 204 (1975) ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved.") In addition to sending a demand letter, in order to move forward with a G.L. c. 93A claim the plaintiff must also allege that a demand letter was sent in his complaint. *See City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 574, 506 N.E.2d 106, 109 (1987) ("The failure of the [plaintiff] to allege the sending of a demand letter is fatal to his § 9 claim."). The Plaintiff does not allege that a specific demand letter was sent in his Complaint. Because the Plaintiff is unable to sustain his burden of establishing the essential elements of his 93A claim, any and all relief they sought under G.L. c. 93A must be denied.

The Plaintiff's G.L. c. 93A claim must also be rejected, because it is dependent on the survival of his other claims. Here, the Plaintiff does not sufficiently allege any new and independent facts establishing that the Defendant engaged in unfair or deceptive practices. "In order to state a claim under Ch. 93A, a plaintiff must allege a 'pernicious purpose,' an 'ulterior motive,' or a 'coercive or extortionate objective.'" *Cyran v. Sovereign Bank*, 2008 WL 2510146, at *5 (D. Mass. June 10, 2008) (citing *Framingham Auto Sales v. Workers' Credit Union*, 41 Mass.App.Ct. 416, 418, 671 N.E.2d 963). Because the Plaintiff fails to allege

15

motive,' or a 'coercive or extortionate objective.'" *Cyran v. Sovereign Bank*, 2008 WL 2510146, at *5 (D. Mass. June 10, 2008) (citing *Framingham Auto Sales v. Workers' Credit Union*, 41 Mass.App.Ct. 416, 418, 671 N.E.2d 963). Because the Plaintiff fails to allege specific facts to support a plausible claim for relief under any of the aforementioned claims, his G.L. c. 93A claim cannot survive. *See Pimental v. Wachovia Mortgage Corp.*, 411 F.Supp.2d 32, 40 (D. Mass. 2006) (holding that since the Plaintiff's 93A claim was based solely on her underlying contract and tort claims that were found to be unsustainable, the Defendant cannot be held liable under G.L. c. 93A).

Furthermore, the Plaintiff fails to show how the Defendant's alleged actions caused him loss. G.L. c. 93A requires the establishment of a causal connection between the unfair and deceptive act and an adverse consequence or loss. *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790, 840 N.E.2d 526 (2006) ("proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute"). Here, the Plaintiff has alleged no facts establishing a causal connection between his loss and Defendant's alleged conduct.

In June 2010, Plaintiff applied for HAMP and was rejected for failure to supply all documentation. Plaintiff was advised to send in the documentation, even though the Defendant had sent letters and placed telephone calls to the Plaintiff regarding the missing documentation. In June, 2010, Plaintiff through his bankruptcy attorney, requested a loan modification. Attorney was advised to send in a loan modification package and to call Loss Mitigation. In December, 2010, Aurora identified the Plaintiff as being eligible/qualified for HASP. The foreclosure was placed on hold and remains on hold to this date. Regardless of whether the Plaintiff complies with his trial HAMP agreement, and regardless of whether he

16

is accepted for a permanent modification, the complaint he has advanced against Aurora must be dismissed.

## V. CONCLUSION

In the case at hand, the Plaintiff's Complaint fails to state claims for relief that are plausible on their face. As a result, the Defendants respectfully request that this Court grant its Motion to Dismiss or and for such other and further relief as this Court may deem just and proper.

Dated: April 26, 2011

Respectfully Submitted,

Aurora Loan Services, LLC and
Mortgage Electronic Registration Systems
As Nominee
By its attorneys,

/s/ Reneau J. Longoria
Reneau J. Longoria, Esq. (BBO #635118)
John A. Doonan, Esq. (BBO# 547838)
Stephen M. Valente, Esq. (BBO#663118)
Erin P. Severini, Esq. (BBO#654644)
Doonan, Graves & Longoria, LLC
100 Cummings Center Suite 225D
Beverly, MA 01915
Tel. (978) 921-2670
Fax (978) 921-4870
rjl@dgandl.com

## CERTIFICATE OF SERVICE

I, Reneau J. Longoria, hereby certify that on April 26, 2011, I served a true and correct copy of the Defendants' Memorandum of Law in Support of its Motion to Dismiss by electronic notification and first class mail, postage prepaid, to:

/s/ Reneau J. Longoria
Reneau J. Longoria Esq.

David Zak, Esq.
Zak Law Offices, PC
701 Broadway
Revere, MA 02151
dzak@zaklawoffices.com

18